UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
------------------------------------------------------------------------X
NEVILLE, RODIE AND SHAW, INC.,

    Plaintiff,

           - against -

E.A. PRESCOTT LEGARD, AS EXECUTOR OF THE
ESTATE OF EDWIN F. LEGARD, JR.,

    Defendant.
------------------------------------------------------------------------X

Case No.

## COMPLAINT

Plaintiff Neville, Rodie and Shaw, Inc. ("NRS" or the "Corporation"), by its attorneys, Kurzman, Eisenberg, Corbin & Lever, LLP, as and for its Complaint against Defendant E.A. Prescott LeGard ("Executor"), as Executor of the Estate of Edwin F. LeGard, Jr. (the "Estate" or the "Decedent"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. NRS is a citizen of New York as it is a corporation organized under the laws of New York with its principal place of business in New York County.

2. The Decedent died on or about September 23, 2022.

3. Prior to his death, the Decedent was a citizen of Connecticut.

4. The Decedent was the owner of 20 shares of common stock in NRS (the "Decedent's Shares").

5. By Decree, dated September 28, 2022, the Executor was appointed as the executor of the Estate by the Connecticut Probate Court.

6. Pursuant to 28 U.S.C. § 1332(c)(2), the Executor is a citizen of Connecticut.

7. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because of diversity of citizenship and because the value of the rights in controversy, the Decedent's Shares, exceeds $75,000.00.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).

## **FACTUAL BACKGROUND**

9. On or about December 22, 2003, the owners of all of the common stock of NRS (the "Shareholders"), including the Decedent, entered into a restated Shareholders' Agreement (the "Agreement").

10. Section 2(A) of the Agreement provides for the rights and obligations of the Corporation in the event of the death of a Shareholder.

11. Specifically, Section 2(A) establishes the purchase price to be paid for a deceased Shareholder's shares:

> Upon the death of any Shareholder, the Corporation shall have the obligation to purchase all of the decedent's shares as soon thereafter as is practicable. The purchase price shall be the Book Value of the shares as of the end of the fiscal year completed prior to the date of the shareholder's death after the audit for such year has been finalized.

12. Section 2(A) also sets forth the procedure for payment of the established purchase price for a deceased Shareholder's shares:

> The purchase price for a deceased shareholder's shares may be payable in cash or, at the option of the Corporation, half in cash at the time of purchase and the balance by a promissory note, payable in equal semi-annual installments for a period of one year thereafter, bearing interest at five percent (5%) per annum or as otherwise agreed.

13. Section 2(A) also establishes a procedure if the Corporation "does not have sufficient surplus" to pay the purchase price for a deceased Shareholder's shares:

If the Corporation is unable to purchase the decedent's shares because the Corporation does not have sufficient surplus, the surviving Shareholders shall have the right to purchase all of the decedent's stock within 60 days of the death of the shareholder, on a pro rata basis or on any other basis on which they agree, at Book Value. If the surviving Shareholders do not exercise their right to purchase the decedent's shares, the Corporation shall have the obligation to accumulate surplus or reduce capital so that it can legally purchase the decedent's shares from his estate in accordance with this paragraph, and until such purchase, the Corporation shall (i) declare no dividends and (ii) limit the payment of salaries and bonuses to Shareholders to not more than 80% of estimated net income (prior to payment of any salaries or bonuses).

14. Section 2(A) also establishes a procedure for purchase of a deceased Shareholder's shares if neither the Corporation or the other Shareholders purchase the shares within one year of the death of the Shareholder:

If a deceased shareholder's shares are not purchased by the Corporation (or the other Shareholders) within one year from the date of death, the legal representatives and/or beneficiaries or heirs shall have the right to sell such shares, but the Corporation's obligation to purchase such shares shall continue in effect until such shares are sold, at which time its obligation shall expire without liability of any kind to the Corporation. The person or persons to whom such shares are assigned, sold or pledged shall execute an instrument substantially in the form of Exhibit A hereto (a copy of which shall be delivered to each party to this Agreement)[.]

15. Section 2 of the Agreement defines Book Value:

"Book Value" per share shall be the book value determined in accordance with generally accepted accounting principles from the books of the Corporation by its independent certified public accountants regularly retained by the Corporation (who need not make an interim audit). Such determination shall be conclusive on all parties including a decedent's estate.

16. Section 2 of the Agreement further provides:

Each Shareholder agrees that the provisions of this Agreement shall govern (i) the ownership by his estate of shares of stock in the event of his death, (ii) the ownership by him of shares of stock in the event he ceases to be employed or otherwise associated with the Corporation for any reason including discharge, with or without cause, (iii) the assignment, sale or pledge of any of his shares of stock by the particular Shareholder.

No Shareholder (or legal representative) in restricted categories A, B or C below shall be permitted to continue to own or to assign, sell or pledge his shares of

3

Common Stock unless with respect thereto the Corporation or other Shareholders fail to purchase such shares of Common Stock pursuant to this Agreement.

17. Section 2 of the Agreement also provides that "[t]he shares to be purchased by the Corporation pursuant to this Section 2 shall be transferred free and clear of all liens and encumbrances and with all transfer taxes (to the extent applicable) paid."

18. Section 5 of the Agreement provides that "[t]he shares of Common Stock of the Corporation cannot be readily purchased or sold in the open market, and for that reason, among others, the parties hereto will be irreparable damaged in the event that this Agreement is not specifically enforced."

19. Section 5 of the Agreement further provides that "any controversy concerning the right or obligation to purchase or sell any of the shares of Common Stock . . . shall be enforceable in a court of equity by specific performance . . . ."

20. The Decedent originally purchased 10 shares of Common Stock of NRS in June 2002 for $85,500.00, which was the Book Value of said shares, represented by Certificate #49.

21. Following a two-for-one stock split in March 2007, the Decedent received an additional 10 shares of Common Stock of NRS, represented by Certificate #58 (Certificate #58 together with Certificate #49, the "Certificates").

22. Following the Decedent's death, the Corporation communicated with the Executor concerning the Corporation's obligation to purchase the Decedent's Shares in accordance with the Agreement.

23. The Executor demanded that the Corporation purchase the Decedent's Shares at a value other than Book Value.

24. The Corporation provided the Executor with, among other things, financials reflecting the per share Book Value for the fiscal year ending in 2021, i.e., "the Book Value of the shares as of the end of the fiscal year completed prior to the date of the shareholder's death."

25. The per share Book Value of the Corporation's common stock was $15,204.06 per share.

26. The Book Value of the Decedent's Shares at the end of the fiscal year ending in 2021 was $304,081.20.

27. The Book Value of the Decedent's Shares represented an increase in value of $218,581.20.

28. In accordance with Section 2(A) of the Agreement, the Corporation demanded that the Executor sell the Decedent's Shares back to the Corporation.

29. The Corporation requested that the Executor tender the Certificates representing the Decedent's Shares by December 15, 2022.

30. To date, the Executor has failed and refused to tender the Certificates representing the Decedent's Shares and sell the Decedent's Shares back to the Corporation at Book Value.

## AS AND FOR A FIRST CAUSE OF ACTION

31. NRS repeats and realleges the allegations of paragraphs 1 through 30 of the Complaint as if fully set forth at length herein.

32. All of the Shareholders of NRS, including the Decedent, executed and entered into the Agreement.

33. The Agreement obligates the Corporation to purchase the Decedent's Shares at Book Value.

34. The Corporation remains ready, willing, and able to perform all of its obligations under the Agreement to purchase the Decedent's Shares.

35. The Executor has failed and refused to perform his obligations under the Agreement insofar as he has failed to tender and sell the Decedent's Shares back to the Corporation at Book Value.

36. The Corporation has no adequate remedy at law to enforce the provisions of the Agreement other than specific performance.

37. The Corporation is entitled to specific performance of the terms, conditions, and provisions of the Agreement by court decree, including an Order that the Executor tender the Certificates and sell the Decedent's Shares to the Corporation at Book Value subject to the provisions of the Agreement.

WHEREFORE, NRS demands judgment as follows:

i. On the First Cause of Action, the entry of an order directing Defendant E.A. Prescott LeGard, as Executor of the Estate of Edwin F. LeGard, Jr. to specifically perform under the Agreement by tendering the Certificates and selling the Decedent's Shares to the Corporation at Book Value subject to the provisions of the Agreement;

ii. For the costs and disbursements of this action; and

iii. For such other relief as to the Court seems just and proper.

Dated: White Plains, New York
       February 24, 2023

                                        RUBIN & JACOBSON, LLC

                                        By: *David W. Rubin*
                                            David W. Rubin, Esq.
                                            *Attorneys for Plaintiff*
                                            707 Summer Street, 5th Floor
                                            Stamford, Connecticut 06901
                                            drubin@rubinjacbson.com
                                            (203) 353-1404

                                        KURZMAN EISENBERG CORBIN & LEVER, LLP

                                        By: _____
                                            Fred D. Weinstein, Esq.
                                            (*seeking admission pro hac vice*)
                                            *Attorneys for Plaintiff*
                                            One North Broadway, 12th Floor
                                            White Plains, New York 10601
                                            fweinstein@kelaw.com
                                            (914) 285-9800